**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
STEVEN WAYNE GOLDEN,            )
                                )
           Petitioner,          )
                                )
     v.                         )   1:14CV129
                                )
FRANK PERRY,                    )
                                )
           Respondent.          )
```

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On August 4, 2011, a jury in the Superior Court of Randolph County found Petitioner guilty of perpetrating a hoax by use of a false bomb in case 10CRS51743. (Docket Entry 2, ¶¶ 1, 2, 4-6; see also Docket Entry 6-3 at 11 (verdict).) On that same date, Petitioner pled guilty to attaining habitual felon status in case 10CRS5064. (Docket Entry 2, ¶¶ 2, 6; see also Docket Entry 6-3 at 12-15 (transcript of plea).) The trial court sentenced Petitioner to 116 to 149 months of imprisonment. (Docket Entry 2, ¶ 3; see also Docket Entry 6-3 at 18-19 (judgment).)

Petitioner appealed and, on December 4, 2012, the North Carolina Court of Appeals issued a published decision finding no error in part and no prejudicial error in part. State v. Golden, __ N.C. App. __, 735 S.E.2d 425 (2012). Petitioner filed neither a petition for discretionary review with the North Carolina Supreme

Court nor a petition for a writ of certiorari with the United States Supreme Court. (Docket Entry 2, ¶ 9(g)-(h).)[1]

While the North Carolina Court of Appeals maintained jurisdiction over his direct appeal, Petitioner filed a pro se motion for appropriate relief ("MAR") with the state trial court on May 15, 2012. (Docket Entry 2, ¶¶ 10, 11(a)(1)-(6); see also Docket Entry 7-3.)[2] The trial court summarily denied that motion on June 6, 2012. (Docket Entry 2, ¶ 11(7)-(8); see also Docket Entry 7-4.) Petitioner then filed a pro se certiorari petition with the North Carolina Court of Appeals, which that court stamped as filed on July 6, 2012. (Docket Entry 2, ¶ 11(b)(1)-(6); see also Docket Entry 7-5.) The Court of Appeals denied that petition on July 24, 2012. (Docket Entry 2, ¶ 11(b)(7)-(8); see also Docket Entry 7-7.) Subsequently, Petitioner submitted a certiorari petition to the North Carolina Supreme Court (Docket Entry 2, ¶ 11(c)(1)-(6); Docket Entry 8-1), which that court accepted as filed on August 22, 2012 (Docket Entry 2, ¶ 11(c)(3); see also Docket Entry 8-2 at 2), and dismissed on October 4, 2012 (Docket Entry 2, ¶ 11(c)(7)-(8); Docket Entry 8-2).

---

[1] Although Petitioner checked the "Yes" box on his Petition in response to the question, "Did you file a petition for certiorari in the United States Supreme Court?" (see Docket Entry 2, ¶ 9(h)), the docket number he provided corresponds to the case number assigned by the North Carolina Supreme Court to Petitioner's certiorari petition filed in that court in connection with his state collateral challenge (see Docket Entry 8-2 at 2).

[2] The MAR attached to Respondent's brief in support of his summary judgment motion reflects a file-stamped date of June 6, 2012. (See Docket Entry 7-3 at 2.) However, Petitioner dated the MAR May 13, 2012 (see Docket Entry 7-3 at 10-11), he asserts in his Petition that he filed the MAR on May 15, 2012 (Docket Entry 2, ¶ 11(a)(3)), and the trial court's order denying the MAR recites the MAR's filing date as May 15, 2012 (Docket Entry 7-4 at 2).

-2-

Petitioner thereafter submitted his Petition in this Court (Docket Entry 2), which he failed to date as mailed (see id. at 20), but which contained notarized "acknowledgments" dated January 28, 2014, and February 6, 2014 (see id. at 24, 33).[3] The Court received the Petition and stamped it as filed on February 11, 2014. (See id. at 1.) Respondent moved for summary judgment on statute of limitation grounds and on the alternative grounds that the claims in the Petition fail as a matter of law. (Docket Entry 5.) Petitioner has filed responsive documents (Docket Entries 11, 13),[4] as well as a motion seeking appointment of counsel (Docket Entry 10), and Respondent has replied (Docket Entry 12). For the reasons that follow, the Court should find the Petition barred as untimely.

---

[3] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the Court must deem a Section 2254 petition filed on the date the petitioner signs the petition, under penalty of perjury, as submitted to prison authorities for mailing. However, in this case, Petitioner failed to include a date in the blank provided in the Petition for this purpose. (See Docket Entry 2 at 20.) As the Petition contains a notarized acknowledgment dated February 6, 2014 (see id. at 33), this date constitutes the earliest day Petitioner could have submitted the Petition to prison authorities. Nevertheless, as discussed in more detail below, even construing the date of submission liberally and using the earlier date of acknowledgment (January 28, 2014) (see id. at 24), the Petition remains barred by the applicable statute of limitations.

[4] Petitioner identifies two new grounds for relief in response to Respondent's motion for summary judgment which he did not raise in his Petition. (Compare Docket Entry 2 at 9, 11, 14, with Docket Entry 11 at 3-5.) Petitioner contends that his trial counsel provided ineffective assistance by failing to (1) excuse Juror No. 6 after she stated that she had previously sought a protective order against her husband; and (2) request a mistrial after the trial court replaced Juror No. 7 with an alternate juror mid-trial. (Docket Entry 11 at 3-5.) These new claims fail for two reasons. First, as Respondent had already answered the Petition, a motion to amend the Petition under Federal Rule of Civil Procedure 15(a)(1)(B) constituted the proper vehicle for Petitioner to add new claims. Second, as discussed in more detail below, the applicable statute of limitations bars all of Petitioner's claims, including the new claims.

## Petitioner's Claims

Petitioner raises three claims for relief in his Petition: (1) the trial court erred by not retroactively applying the 2011 amendments to North Carolina's Structured Sentencing laws (the Justice Reinvestment Act ("JRA")) to Petitioner's sentence (Docket Entry 2 at 9); (2) his trial counsel provided ineffective assistance in that he lacked trial experience and misadvised Petitioner to reject a plea offer (id. at 11); and (3) failure to apply the JRA retroactively to Petitioner's sentence violated his Eighth Amendment rights and constituted a "fundamental miscarriage of justice" (id. at 14).

## Discussion

Respondent requests summary judgment primarily on the ground that the Petition was filed outside of the one-year limitation period, 28 U.S.C. § 2244(d)(1). (Docket Entry 6 at 5-9.) In order to assess Respondent's statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his § 2254 Petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

-4-

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The record does not reveal any basis for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case. As a result, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

Here, the North Carolina Court of Appeals denied Petitioner's appeal on December 4, 2012, Golden, __ N.C. App. __, 735 S.E.2d 425, and Petitioner did not file certiorari petitions with either the North Carolina or United States Supreme Courts (Docket Entry 2, ¶ 9 (g)-(h)). Thus, Petitioner's convictions became final on the day his time expired for filing a petition for discretionary review with the North Carolina Supreme Court on direct appeal. Gonzales v. Thaler, __ U.S. __, __, 132 S. Ct. 641, 656 (2012) ("We hold that, for a state prisoner who does not seek review in a State's

highest court, the judgment becomes 'final' on the date that the time for seeking such review expires.").

Respondent calculates the date of finality as January 11, 2013, by determining that the Court of Appeals' mandate issued on December 27, 2012, see N.C. R. App. P. 32(b) (providing that, unless court orders otherwise, mandate issues 20 days after written opinion filed); N.C. R. App. P. 27(a) (extending deadline when last day falls on weekend or holiday), and then adding 15 days for the period allotted for appealing to the North Carolina Supreme Court, see N.C. R. App. P. 14(a) & 15(b) (allowing 15 days after issuance of mandate to file notice of appeal or petition for discretionary review). (See Docket Entry 6 at 5-6.) That approach follows the approach previously endorsed in this District. See Saguilar v. Harkleroad, 348 F. Supp. 2d 595, 598-600 (M.D.N.C. 2004) (holding conviction final on direct review 35 days after North Carolina Court of Appeals' opinion where no timely petition for discretionary review filed).[5] The limitations period then ran until it expired a year and a day later on Monday, January 13, 2014. See Fed. R. Civ. Proc. 6(a)(1)(A), (C) (instructing not to count day of event that triggered time period and that, when last

---

[5] Petitioner argues that his convictions finalized when the North Carolina Court of Appeals denied his appeal on December 4, 2012, i.e., even earlier than Respondent's proposed date of January 13, 2013; however, he contends that his Petition remains timely because he believes that weekends and holidays should not count in calculating the one-year limitations period. (See Docket Entry 2, ¶ 18; see also id. at 20, 22.) The applicable rules provide otherwise. See Rule 12 of the Rules Governing Section 2254 Cases (applying the Federal Rules of Civil Procedure to proceedings under Section 2254); Fed. R. Civ. Proc. 6(a)(1)(B) (instructing that, when calculating time periods, "count every day, including intermediate Saturdays, Sundays, and legal holidays"); Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000) (applying Fed. R. Civ. Proc. 6(a) to Section 2254(d)'s one-year limitations period).

day of period falls on weekend or holiday, the period continues to run until the next non-weekend day or holiday). Regardless whether the Court considers January 28, 2014, or February 6, 2014, as the date on which Petitioner submitted the instant Petition to prison authorities for mailing under Rule 3(d) of the Rules Governing Section 2254 Cases, his Petition remains untimely.

Petitioner did make certain state collateral filings, which generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)," Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). However, those filings did not toll the limitations period for two reasons. First, the North Carolina Court of Appeals denied Petitioner's certiorari petition seeking review of his MAR's denial on July 24, 2012. (See Docket Entry 7-7.) Thus, Petitioner's collateral filings ended before his direct appeal concluded on December 4, 2012, and could not toll a limitations period that had yet to begin. Second, neither Petitioner's MAR nor his certiorari petition in the North Carolina Supreme Court seeking review of his MAR's denial constitute "properly filed" documents for purposes of statutory tolling. See 28 U.S.C. § 2244(d)(2) (tolling one-year period for "[t]ime during which a properly filed application for State post-conviction . . . review . . . is pending"). As Petitioner filed his MAR during the pendency of his direct appeal, he should have filed the MAR in the Court of Appeals

rather than the trial court.  See N.C. Gen. Stat. § 15A-1418(a) ("When a case is in the appellate division for review, a [MAR] . . . must be made in the appellate division."). Petitioner's PDR similarly could not toll his federal filing period because North Carolina law does not provide for the North Carolina Supreme Court to review the denial of a non-capital MAR.  See N.C. Gen. Stat. § 15A-1422(f) ("Decisions of the Court of Appeals on [non-capital MARs] . . . are final and not subject to further review by appeal, certification, writ, motion, or otherwise.").

Petitioner does not dispute the foregoing time-line, but he does advance several reasons why he believes the Court should consider the Petition despite its untimeliness.  (Docket Entry 2, ¶ 18; see also Docket Entry 13 at 1-2.)  In other words, Petitioner requests equitable tolling, which doctrine the Supreme Court has ruled applicable in this context, see Holland v. Florida, 560 U.S. ___, ____, 130 S. Ct. 2549, 2562 (2010).  Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)) (emphasis added).

Petitioner first asserts that equitable tolling applies because he possesses only an "8th grade education." (Docket Entry 2, ¶ 18.)  Petitioner's limited education does not suffice to establish grounds for equitable tolling.  Courts "will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity." United States v. Sosa,

-8-

364 F.3d 507, 513 (4th Cir. 2004) (emphasis added). Members of this Court have repeatedly held that claims of limited education or illiteracy do not warrant application of equitable tolling. See Jackson v. United States, Nos. 1:09CV112, 1:07CR169-5, 2009 WL 5171869, at *2-3 (M.D.N.C. Dec. 22, 2009) (unpublished) (Dixon, M.J.) (recommending against grant of equitable tolling "because illiteracy does not constitute grounds for equitable tolling"), adopted, slip op. (M.D.N.C. May 17, 2010) (Beaty, C.J.); Barbee v. Brandon, No. 1:09CV08, 2009 WL 1035220, at *2 (M.D.N.C. Apr. 16, 2009) (unpublished) (Dietrich, M.J.) (recognizing that the "[p]etitioner's lack of formal education and familiarity with the law are not sufficient reasons to grant equitable tolling"), adopted, 2009 WL 1683205 (M.D.N.C. June 15, 2009) (Beaty, C.J.); Bryant v. Beck, No. 1:08CV181, 2008 WL 2949247, at *2-3 (M.D.N.C. July 30, 2008) (unpublished) (Eliason, M.J.) (recommending dismissal for untimeliness despite petitioner's alleged lack of education because "illiteracy does not constitute grounds for equitable tolling"), adopted, slip op. (M.D.N.C. Feb. 5, 2009) (Osteen, Jr., J.).

Petitioner next contends that the Court should consider his Petition despite its untimeliness because the North Carolina Court of Appeals did not send him a copy of the order denying his certiorari petition despite his requesting a copy in writing twice. (Docket Entry 2, ¶ 18.) That argument fails for two reasons. First, even if Petitioner did not actually receive a copy of the appellate court's order, to qualify for equitable tolling,

he must still exercise due diligence to determine the status of his case.  See Woodward v. Williams, 263 F.3d 1135, 1143 (10th Cir. 2001) (finding that "a prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter"); see also Drew v. Department of Corr., 297 F.3d 1278, 1288 (11th Cir. 2002) (concluding that "[a] lengthy delay between the issuance of a necessary order and an inmate's receipt of it might provide a basis for equitable tolling if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely federal habeas corpus petition"); Bailey v. Johnson, No. 1:08CV842 (LO/TRJ), 2009 WL 2232747, at *4-5 (E.D. Va. July 20, 2009) (unpublished) (recognizing that Fourth Circuit has not spoken directly on issue but finding "well accepted" the "principle that one who fails to act diligently cannot invoke equitable principles") (citing Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001)).  Here, Petitioner has neither provided copies of his alleged communications to the appellate court nor even the dates of such communications.  Under these circumstances, Petitioner has failed to show sufficient diligence to warrant equitable tolling.

Second, even assuming the delay between the North Carolina Court of Appeals' denial of Petitioner's certiorari petition on July 24, 2012, and the date Petitioner filed a certiorari petition in the North Carolina Supreme Court (August 22, 2012, by which date Petitioner clearly knew the Court of Appeals had denied his

petition in that court) qualified for equitable tolling, such tolling would not render the instant Petition timely. The conclusion of Petitioner's direct appeal on December 4, 2012 triggered the statute of limitations in this case and thus equitable tolling from July 24, 2012 to August 22, 2012 would provide no benefit to Petitioner.

Next, Petitioner maintains that equitable tolling applies because he "broke [his] right ankle rule [sic] bad," necessitating medical treatment and "medication," and that "it[] took [him] a year to lean [sic] to walk." (Docket Entry 2, ¶ 18.) That assertion misses the mark, as Petitioner did not provide the Court with the dates of his injury and alleged incapacity and failed to otherwise show how such injury prevented him from timely filing his Petition. See Wilson v. VA D.O.C., No. 7:09CV00127, 2009 WL 3294835, at *4 (W.D. Va. Oct. 13, 2009) (unpublished) ("Allegations of even serious . . . physical injuries are not sufficient to warrant invocation of equitable tolling unless petitioner also demonstrates how these conditions constituted an extraordinary circumstance that prevented him from filing a timely petition.").

Finally, Petitioner argues that the Court should apply equitable tolling because the authorities transferred him to different prisons "[four] times since Jan[uary 3,] 2013," prison officials "lost [his] stuff [two] times," and he "still [does not] have some papers." (Docket Entry 2, ¶ 18.) That argument lacks merit. Courts generally do not recognize the difficulties inherent in prison life, such as segregation, lockdowns, or transfers, as

-11-

grounds for equitable tolling.  See, e.g., Diver v. Jackson, No. 1:11CV225, 2013 WL 784448, at *3 (M.D.N.C. Mar. 1, 2013) (unpublished) (Auld, M.J.) (recognizing that "prison conditions, such as transfers, lockdowns, or misplacement of legal papers, normally [do not] provide a basis for equitable tolling"); Allen v. Johnson, 602 F.Supp. 2d 724, 727-28 (E.D. Va. 2009) (observing that "transfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances" warranting equitable tolling).  That principle applies with particular force here, where Petitioner has failed to explain which "stuff" and "papers" he lacks or how his transfers to different prisons prevented him from filing the instant Petition in a timely manner.  Stillman v. LaMarque, 319 F.3d 1199, 1202 (9th Cir. 2003) (finding equitable tolling unwarranted where petitioner failed to show how segregation made timely filing impossible).

In sum, the statute of limitations bars the Petition in this case and Petitioner has failed to advance any meritorious grounds for either statutory or equitable tolling of the one-year limitations period.[6]

---

[6] Under these circumstances, the Court need not reach Respondent's arguments addressed to the merits of Petitioner's claims.  (See Docket Entry 6 at 9-20.)  Moreover, the untimeliness of the Petition forecloses a finding that this case presents extraordinary circumstances warranting appointment of counsel.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 5) be granted, that the Petition (Docket Entry 2) be dismissed, and that Judgment be entered dismissing this action.

**IT IS ORDERED** that Petitioner's Motion for Appointment of Counsel (Docket Entry 10) is **DENIED**.

                             /s/ L. Patrick Auld
                             **L. Patrick Auld**
                             **United States Magistrate Judge**

December 31, 2014